1

2

3

4

5

6

7

8                IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| GERMAN COREAS, | Case No. 1:10-cv-00703 LJO JLT (PC) |
| Plaintiff, | **FINDINGS AND RECOMMNENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| MILLER, et. al., | (Doc. 27) |
| Defendants. | |

16

17        Plaintiff is an inmate at Corcoran State Prison.  In 2008, he underwent surgery to repair

18   the ACL in his left knee.  In this action, Plaintiff alleges Defendant Miller failed to provide him

19   supplies to change his soiled bandages and he claims this failure caused him to contract cellulitis.

20        Before the Court is Defendant's motion for summary judgment.  (Doc. 27)  Plaintiff filed

21   opposing papers (Doc.31), to which Defendants have replied.  (Doc. 32, 33)  For the reasons set

22   forth below, the Court recommends that Defendant's motion for summary judgment be

23   **GRANTED**.

24   **I.      BACKGROUND**

25        **A.      Procedural History**

26        Plaintiff initiated this case on April 22, 2010.  (Doc. 1)  The Court screened his initial

27   complaint and ordered Plaintiff to notify the Court whether he wished to proceed on the

28   cognizable claim or whether he wished to file an amended complaint.  (Doc. 8)  On July 15, 2011,

1

1  Plaintiff notified the Court that he wished to proceed only on the cognizable claim.  (Doc. 9)

2  Thus, the Court dismissed all claims and defendants except for the claim that Defendant Miller

3  failed to provide adequate medical care when she refused to change his bandages and which

4  Plaintiff alleged, caused him to contract an infection which required hospitalization to treat.

5  (Doc. 10)

6  **B.     Factual Background**

7      While housed at Corcoran State Prison, on August 7, 2008, Plaintiff underwent surgery to

8  repair his ACL in his left knee.  Fact[1] 5.  This surgery occurred at private hospital away from the

9  prison grounds and the surgery was performed by a private physician.  (Doc. 27-2 at 17-19)  At

10  the conclusion of the surgery, Plaintiff's wound was sutured, dressed, wrapped with an ACE

11  bandage and placed in a knee immobilizer.  Fact 5.  At the time of his discharge, there is no

12  indication in his medical chart that the wound was bleeding (Id.), though Plaintiff contends that it

13  was and that Dr. Smith, the surgeon, was aware of this fact.  Fact 12

14      At about 4 p.m. on August 8, 2008, Plaintiff was seen by Nurse Truworthy and Dr.

15  Beregovskya at the prison.  Fact 6.  The medical professionals observed that Plaintiff had no

16  temperature; he had normal skin color and displayed no signs of distress.  Id.  Dr. Beregovskya

17  prescribed ibuprofen and morphine for pain and instructed Plaintiff in the use of crutches.  Id.  At

18  the conclusion of the visit, Dr. Beregovskya noted Plaintiff was in stable condition.  Id.  Plaintiff

19  does not recall this treatment and does not recall whether he asked to have his dressings changed

20  during this appointment.  Fact 14.

21      Plaintiff contends that sometime on this date, he asked Defendant Miller for supplies to

22  change the bandages.  Fact 13.  Plaintiff claims that at this time, his bandages were soaked with

23  blood and other fluids.   Plaintiff alleges that Miller told him that she could not provide the

24  supplies because there were no doctors' orders in Plaintiff's chart that authorized providing

25  Plaintiff with these supplies. Fact 13.

26  _____

27  [1] The Court refers to the Statement of Undisputed Facts (Doc. 38-2) by referencing the specific Fact at issue.  The Court refers only to Facts or portions thereof that are not disputed by Plaintiff or to Facts which are deemed undisputed based upon Plaintiff's failure to provide evidence that a genuine dispute of fact exists.

28

The next day, on August 9, 2008, Plaintiff returned to the medical clinic at Corcoran and was found to have a temperature of 103 degrees. Fact 7.  His lower, left leg was red and swollen. Id.  He was transferred to Community Regional Medical Center—a hospital off-site—where he was diagnosed with cellulitis.  Id.  Doctors determined also that he did not have an infection at the operative site.  Id.  Plaintiff underwent treatment and by August 13, 2008, doctors noted that Plaintiff's incision was healing nicely and the swelling in his left leg was reduced.  Fact 8.

## II.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute regarding a material fact is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party.  Id.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Where the moving party will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323).

If the moving party has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (citing Anderson, 477 U.S. at 257

1  (1986)) (emphasis in the original).  Although the nonmoving party need not establish a material

2  issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere

3  scintilla of evidence in [its] favor" to withstand summary judgment.  Stefanchik, 559 F.3d at 929.

4  Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

5  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Electric Indus. Co. v. Zenith

6  Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).

7      In resolving a summary judgment motion, "the court does not make credibility

8  determinations or weigh conflicting evidence."  Soremekun, 509 F.3d at 984.  Rather, "the

9  evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn

10  in [its] favor."  Anderson, 477 U.S. at 255.  See T.W. Electric Service, Inc. v. Pacific Electric

11  Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).  Inferences, however, are not drawn out

12  of the air; it is the nonmoving party's obligation to produce a factual predicate from which the

13  inference may justifiably be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-

14  45 (E.D. Cal. 1985).

15      The court must apply standards consistent with Federal Rule of Civil Procedure 56 to

16  determine whether the moving party has demonstrated that there is no genuine issue of material

17  fact and judgment is appropriate as a matter of law.  Henry v. Gill Indus., Inc., 983 F.2d 943, 950

18  (9th Cir. 1993).  In resolving a motion for summary judgment, the Court examines the evidence

19  provided by the parties, including pleadings depositions, answer to interrogatories, and

20  admissions on file.  See Fed. R. Civ. P. 56(c).

21      **B.    Eighth Amendment – Inadequate Medical Care**

22      To state a claim for the violation of the Eighth Amendment based on inadequate medical

23  care, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate

24  indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  In other

25  words, the plaintiff must demonstrate: (1) a serious medical need; and (2) a deliberately

26  indifferent response by the defendant.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

27      A medical need is serious "if the failure to treat the condition could result in further

28  significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v. Smith, 974

F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997).  Indications that a person has a serious need for medical treatment include: the existence of an injury that a reasonable doctor or patient would find worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.  McGuckin, 974 F.2d at 1059-60 (citations omitted).

A defendant acts with deliberate indifference when he knowingly fails to respond to a serious medical need, thereby inflicting harm on the plaintiff.  See Farmer v. Brennan, 511 U.S. 825, 837-42 (1994); Jett, 439 F.3d at 1096.  Deliberate indifference may appear when a defendant denies, delays, or otherwise interferes with medical treatment.  See Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).  Nevertheless, "[d]eliberate indifference is a high legal standard."  Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  A difference in opinion between a physician and his patient over the best course of treatment is also insufficient to demonstrate deliberate indifference.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff contends that Miller's failure to provide supplies to change his bandages on August 8, 2008, caused him to contract cellulitis.  However, at his deposition, Plaintiff admitted that he did not know whether he had contracted the disease before he saw Miller on August 8, 2008.  (Doc. 27-2 at 61)  Indeed, Plaintiff did not know whether he had contracted cellulitis on August 7, 2008 while he was still under the care of the private surgeon.  Id.  Moreover, Plaintiff admitted that he did not know whether cellulitis was caused by failing to have fresh bandages.  Id.

To the contrary, Dr. Ugwueze has opined that Plaintiff "most likely acquired a nosocomial infection, also knows as a hospital-acquired infection, at the time of his surgery.  (Doc. 27-2 at 15)  Dr. Ugwueze believes that this is the case due to "the location and the timing of the cellulitis."  Id.  Given this, Dr. Ugwueze indicated that that the frequency of changes to Plaintiff's bandages had no impact on Plaintiff's condition.  Id.

Plaintiff counters this evidence by providing copies of portions of texts that indicate that changing bandages often, "usually daily," is a mitigating action to prevent infection.  (Doc. 31 at 40, 44)  One of Plaintiff's documents explains that, "Cellulitis is an acute inflammation of the connective tissue of your skin that results from a bacterial or fungal infection.  It may appear gradually over a couple of days or rapidly over a few hours.  It begins as a localized area of red, painful, warm skin, and it may be accompanied by fever and swelling . . .  This infection occurs when bacterial or fungi enter your body through break in the skin, such as from dermatitis, a fungal infection or a skin injury." Id. at 49.

Though this information provides background as to the need to care for a wound and how cellulitis manifests itself, it does not contradict Dr. Ugwueze's opinion that the cellulitis was contracted when Plaintiff underwent his surgery.  Likewise, though it is undisputable that generally, wounds should be kept clean, again, the evidence demonstrates that clean bandage or not, Plaintiff had already contracted cellulitis *before* Defendant refused to provide bandaging supplies to him.  Importantly, Plaintiff admitted at his deposition that no doctor told him that he contracted cellulitis because his dressings weren't changed and he admitted that he didn't know whether he had contracted the disease while in the hospital having his surgery.  (Doc. 27-2 at 61)  Indeed, Plaintiff admitted that he had no evidence that the failure to change his bandage cause him to contract cellulitis. Id.

Nevertheless, Plaintiff seems to argue that the denial of the bandage, even if it did not cause the cellulitis, is a violation of the Constitution.  He asserts that he waited in the clinic for two hours and never received the bandage change and that he was forced to walk to the clinic.  However, the claim at issue here is *only* that Defendant Miller denied him medical care which caused him harm.  (Doc. 8 at 7-8; Doc. 12)  However, there is no showing whatsoever that Plaintiff suffered harm from the delay of one day in receiving the new bandages, given there is no evidence the cellulitis was caused by Miller's conduct.  Though Plaintiff correctly points out that a delay in his medical treatment occurred, this can amount to a constitutional violation *only if* it caused the prisoner.  McGuckin, 974 F.2d at 1060.  Here, there is no evidence that Miller's refusal to provide Plaintiff a new bandage caused him any further injury or caused him any

additional pain.  Therefore, the Court recommends Defendant's motion for summary judgment be **GRANTED**.

### III.    Findings and Recommendations

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that Defendants' motion for summary judgment (Doc. 27), be **GRANTED**.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these findings and recommendations, Plaintiff may file and serve written objections with the Court.  A document containing objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __October 10, 2012__                    _____ **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE